85 F.3d 629
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sharoc RICHARDSON, Petitioner-Appellee,
v.
Denise M. QUARLES, Respondent-Appellant.
 No. 94-1869.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1996.
 
 Before: NELSON and RYAN, Circuit Judges, and ECHOLS, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Does the federal Constitution prohibit a state from placing on trial for attempted murder a man against whom, before jeopardy attached, an identical charge had previously been dismissed--with prejudice--solely because the complaining witness failed to appear in court at the appointed time? The district court answered this question "yes," ordering the man's release from prison on a writ of habeas corpus. We conclude that the question should have been answered "no," and we shall reverse the judgment of the district court.
 
 
 2
 * Sharoc Richardson, the habeas petitioner, shot his father, Raymond Richardson, in the chest. Charged with assault with intent to commit murder and possession of a firearm in the commission of a felony, Sharoc Richardson was scheduled to be tried before Judge Dalton Roberson, of the Recorder's Court for the City of Detroit, Michigan, on October 16, 1989. When the case was called for trial the prosecutor told the court that the complaining witness, Raymond Richardson, had telephoned to say that he was going to be late and might not arrive until 10:30. The prosecutor could not explain why Mr. Richardson was unable to be in court on time. Noting that the son was present, Judge Roberson announced, sua sponte, "The case is dismissed."
 
 
 3
 Defense counsel later signed and presented to Judge Roberson a "motion and order of dismissal" prepared on a pre-printed form. Three out of 13 boxes were checked on the "motion" portion of the form, opposite entries that, when joined together, read as follows: "Defense now moves to dismiss the above-entitled cause with prejudice on the following grounds: Complaining witness has failed to appear." The "order" portion of the form, signed by Judge Roberson under date of October 16, 1989, said "IT IS HEREBY ORDERED THAT the above case be dismissed [X] with [ ] without prejudice."
 
 
 4
 A copy of the order was supposed to go to the prosecutor, according to the distribution list printed on the form, but the prosecutor neither appealed the order nor moved to have it amended to reflect a dismissal without prejudice. Instead the prosecutor filed a new information setting forth charges identical to those that had been dismissed.
 
 
 5
 Judge Roberson signed a felony warrant on the new charges, and Sharoc Richardson was rearraigned on November 7, 1989. At a preliminary examination conducted on November 16, 1989, defense counsel pointed out that Judge Roberson had dismissed the original case "with prejudice" when the defendant's father failed to show up at trial. (Counsel acknowledged, however, that it was Judge Roberson himself who subsequently signed the new warrant.) The prosecutor argued that "[y]ou can't dismiss anything with prejudice until jeopardy attaches," and the court agreed. The "with prejudice" statement, the court said, "has no legal standing."
 
 
 6
 Bound over for trial, Mr. Richardson filed a waiver of trial by jury on December 1, 1989. A bench trial was conducted on January 30, 1990, before Judge Leonard Townsend. Raymond Richardson took the stand as a witness for the prosecution, and Judge Townsend found Sharoc Richardson guilty as charged.
 
 
 7
 Defendant Richardson appealed his conviction to the Michigan Court of Appeals, contending among other things that the trial court lacked jurisdiction to try him on the charges that had been dismissed with prejudice on the date originally set for trial. He also contended that he had been denied effective assistance of counsel because his lawyer had not moved to quash on the basis of the prior dismissal with prejudice.
 
 
 8
 The Michigan Court of Appeals affirmed the conviction, noting that jeopardy had not attached when Judge Roberson dismissed the first case. "In a bench trial," said the court, "jeopardy does not attach until the first witness is sworn. People v. Brower, 164 Mich.App. 242, 416 N.W.2d 397 (1987)."
 
 
 9
 The Court of Appeals having denied a motion for rehearing in which Mr. Richardson argued that his due process rights had been violated by a failure to give res judicata effect to the dismissal with prejudice, Mr. Richardson filed a delayed application for leave to appeal to the Michigan Supreme Court. Again he argued, among other things, that he had been denied due process by reason of the failure to recognize that the new prosecution was barred by res judicata. The Michigan Supreme Court denied leave to appeal.
 
 
 10
 Mr. Richardson then instituted the present habeas corpus proceeding pursuant to 28 U.S.C. § 2254. The district court granted the writ, and this appeal followed.
 
 II
 
 11
 A dismissal with prejudice operates as an adjudication on the merits, under Michigan law. See Rule 2.504(B)(3), Michigan Court Rules, made applicable to criminal proceedings by MCR 6.001(D). Rule 2.504(B)(3) provides, in general, that a dismissal operates as an adjudication on the merits "[u]nless the court otherwise specifies in its order for dismissal...." A dismissal order specifying that the dismissal is "with prejudice" is obviously not an order specifying "otherwise;" on the contrary, it is an order that makes explicit what would be implicit, under the rule, if the dismissal said nothing about prejudice one way or the other.
 
 
 12
 Normally, under Michigan law, an adjudication on the merits means that re-adjudication is barred by the doctrine of res judicata. See Makowski v. Towles, 195 Mich.App. 106, 489 N.W.2d 133 (1992). Michigan does not apply the doctrine of res judicata with absolute rigidity, however. See State v. Estate of Raseman, 18 Mich.App. 91, 104, 170 N.W.2d 503, 509 (1969):
 
 
 13
 "The doctrine of res judicata is not immutable. It reflects a policy of law which seeks to end litigation, but it is only a policy, not an absolute rule, and it need not be and has not been applied rigidly without regard to disparate factual situations."
 
 
 14
 Given the particular factual situation presented in the case at bar, the Michigan courts evidently concluded that an exception to the res judicata doctrine was warranted here. Whether this conclusion was right or wrong, as a matter of Michigan law, is not our concern: "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Cf. Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir.1987) ("The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure"). What we are called upon to decide, rather, is whether Sharoc Richardson was deprived of liberty without due process of law, within the meaning of those words as used in the United States Constitution, when Michigan prosecuted and convicted him on charges identical of those that had earlier been dismissed because of the failure of his father to get to court on time.
 
 
 15
 United States v. Oppenheimer, 242 U.S. 85 (1916), on which Mr. Richardson relies, is not directly in point. Oppenheimer was a federal prosecution in which the applicability of the doctrine of res judicata could be decided without reaching any constitutional issue. As Judge Friendly once remarked, however, "overly sensitive ears are not needed to detect due process overtones" in the Oppenheimer opinion. United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262, 1266 (2d Cir.1975), cert. denied, 426 U.S. 950 (1976). It is incumbent on us to consider these constitutional overtones.
 
 
 16
 Defendant Oppenheimer was indicted on a charge of conspiracy to conceal assets in a bankruptcy. Before jeopardy attached, the indictment was held to have been barred by a one-year statute of limitations. It was subsequently established in another case that this adjudication was wrong, whereupon Oppenheimer was reindicted on the same charge. A unanimous Supreme Court affirmed the quashing of the second indictment on res judicata grounds. "[A] judgment for the defendant upon the ground that the prosecution is barred goes to his liability as a matter of substantive law," the Court said, speaking through Mr. Justice Holmes, "and one judgment that he is free as a matter of substantive law is as good as another." Oppenheimer, 242 U.S. at 87. Although the Double Jeopardy Clause of the Fifth Amendment did not apply in terms, the Court concluded, "the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice ... in order, when a man has once been acquitted on the merits, to enable the government to prosecute him a second time." Id. at 88.
 
 
 17
 If, in the situation before us here, Sharoc Richardson had once been set free "as a matter of substantive law," Oppenheimer suggests that "a fundamental principle of justice" would have been violated by a new prosecution. But that is not what happened. Sharoc Richardson was not set free as a matter of substantive law, he was set free because the father he had shot in the chest failed to show up in court on time. Under these circumstances, it seems to us, no fundamental principle of justice was violated by the new prosecution.
 
 
 18
 We have no way of knowing whether this conclusion conflicts with that reached in White v. United States, 377 F.2d 948 (D.C.Cir.1967). There the court found that a dismissal of an indictment on a charge of which the defendant was subsequently convicted had been with prejudice, and the subsequent prosecution was held to be barred. The opinion does not disclose whether the dismissal of the original indictment was based on a matter of substantive law, as in Oppenheimer, and it does not disclose whether the holding that a new prosecution was barred rested on constitutional grounds.
 
 
 19
 In the case at bar the district court viewed the dismissal of the original charges as "in essence dismissals based upon insufficiency of the evidence." If this view were correct, we should consider ourselves obliged to affirm the issuance of the writ. But it is not correct, in our opinion. Jeopardy had not attached when the original charges were dismissed. The trial had not begun. There was no adjudication on the sufficiency of the evidence.
 
 
 20
 It is true that Judge Roberson--making an obvious mistake, in the view of the Michigan courts[1]--dismissed the case "with prejudice," thereby adjudicating the case "on the merits" in a technical sense. But this was a constructive "merits" adjudication only; unlike the original adjudication in Oppenheimer, where Mr. Oppenheimer was held to have a good defense as a matter of substantive law, it was not an actual adjudication on the merits. What Judge Roberson held was not that Sharoc Richardson had a good defense, but that the case should be dismissed because Raymond Richardson was not in court and was likely to be an hour-and-a-half late in getting there. We do not think that it was fundamentally unjust to give Raymond Richardson another chance to be punctual.
 
 
 21
 If the prosecutor wanted to bring a new case, Sharoc Richardson argues, Michigan law required that he successfully contest the dismissal with prejudice through a motion for reconsideration or an appeal. Again, however, a failure to comply with Michigan law is not necessarily tantamount to a denial of due process. See Sandin v. Conner, 115 S.Ct. 2293 (1995). As the district court noted, quoting Dowling v. United States, 493 U.S. 342, 352 (1990), the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." If it was an infraction of Michigan law for Judge Roberson's mistake to be corrected by anyone other than Judge Roberson himself or a higher court hearing an appeal from Judge Roberson's order, it was not an infraction that violated fundamental fairness.
 
 
 22
 Finally, we are not persuaded that habeas relief can be justified here on the basis of any supposed ineffectiveness of the assistance Sharoc Richardson received from his counsel. If, as is now suggested he should have done, Mr. Richardson's lawyer had formally moved to quash the new charges, we cannot say that there is a reasonable probability that the result of the proceeding would have been any different. The burden of showing such a probability rests on Mr. Richardson, see Strickland v. Washington, 466 U.S. 668, 694 (1984), and he has not carried that burden.
 
 
 23
 The judgment of the district court is REVERSED, and the case is REMANDED with instructions to dissolve the writ.
 
 
 
 *
 The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Under federal law as well, for what it may be worth, a dismissal for want of prosecution would normally be without prejudice, absent any unnecessary delay in bringing the defendant to trial. See United States v. Clay, 481 F.2d 133, 135 (7th Cir.) (Stevens, J.), cert. denied, 414 U.S. 1009 (1973); United States v. Correia, 531 F.2d 1095, 1097 (1st Cir.1976); United States v. Castiglione, 876 F.2d 73, 75-76 (9th Cir.1988), cert. denied, 493 U.S. 954 (1989)